UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | ) | |
|---|---|---|
| | ) | |
| IN RE: HERITAGE PROPANE | ) | NO. 2:07-MC-01 |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Court's order requiring Heritage Propane ("Heritage") to show cause why it should not be held in contempt and injunctive relief issue. A hearing was held on February 1, 2007. R. Charles Wilkin, III, Esquire appeared *Pro Hac Vice* on behalf of Heritage. The respondent's company representative was Tony Slayden, Regional Manager. For the reasons that follow, the order to show cause will be dismissed.

## Background

On February 17, 2006, an employee of Heritage was notified of his obligation, as required by law, to serve as a juror in the United States District Court for the Eastern of Tennessee, Northeastern Division, at Greeneville. During his nine month term of jury service, the employee served a total of 15 days – April 5, June 12 – 16, June 19 – 21, December 5 – 7 and December 11 – 13. After his June service, the juror notified

the Clerk that Heritage had required that he take personal vacation days for his days of jury service.[1] In an effort to resolve the issue, the undersigned's law clerk contacted the general counsel for Heritage who indicated a lack of awareness of both the federal and Tennessee statutes dealing with employee jury service. The Clerk was thereafter advised by the juror that his vacation days had been restored and Heritage Vice President and General Counsel, Robert A. Burk, wrote to the Court that Heritage had corrected the actions taken concerning the juror and had revised its policy to conform to the requirements of the statutes.

As a result of Heritage's representations, no action was taken by the Court at that time. After the juror's December jury service, however, the Clerk was informed that Heritage had once again required its employee to take personal vacation days for his absence from work for jury service. The Court then issued an order for Heritage to show cause why it should not be held in contempt. At the hearing on February 1, 2007, counsel for Heritage proffered to the Court that Heritage's policy had indeed been changed as represented by Mr. Burk in his letter but that the policy change had inadvertently not been communicated to its regional managers.[2] Heritage, through counsel, acknowledged its

---

[1] All jurors are instructed during their orientation session to make the Clerk aware of any problems they encounter with their employers because of jury service.

[2] According to counsel, the employee responsible for communicating the policy change to regional managers had failed to do so because of confusion arising from Heritage's merger with another company during the time in question.

mistake, assured the Court that the juror's vacation days had been restored and that its manager had been advised of Heritage's revised payroll policies.

**Discussion and Findings**

Described as "the very palladium of free government" in The Federalist Papers, the right to a jury trial is a fundamental part of the American judicial system. All thirteen of the original American colonies adopted guarantees of trial by jury. By the time of the American Revolution, the abridgment of the right to jury trial was among the most grievous complaints of the colonists against George III. The 1787 convention wrote jury trial guarantees into the Constitution (Article III) and the 1791 Bill of Rights repeated the guarantee for criminal cases (the Sixth Amendment) and added one for civil trials (the Seventh Amendment). Free election and trial by jury, wrote John Adams, were the people's only security "against being ridden like horses, and fenced like sheep, and worked like cattle, and fed and clothed like hogs and hounds." Thomas Jefferson wrote in a letter in 1789, while serving as Ambassador to France: "Were I called upon to decide whether the people had best be omitted in the legislative or judiciary department, I would say it is better to leave out the legislative."

The jury is as much an institution of self government as is the election of public officials. Jury service on the part of citizens of the United States thus has become one of the most important and basic rights and obligations of citizenship. This is clearly reflected by the adoption by Congress as national policy the obligation of citizens to serve

as jurors when summoned for that purpose. *See* 28 *U.S.C.* § 1861. And if the jury is to fulfill its role, it must have the right to decide cases without fear of reprisal by the government, by the judge or by its private employers.

The issue raised in this proceeding, therefore, involves a precious and significant obligation and right of citizenship. Today, jury service is the only time the federal government requires its citizens to give up their personal time and pursuits to serve the government. We no longer have a military draft. There is no other required period of public service. And our judicial system simply cannot operate without jurors to serve as fact finders and to resolve disputes, both civil and criminal, in an orderly fashion.

The success of the jury system depends on many things but it depends mostly on the public and jurors who will not try to avoid jury service, who will take the time and make the effort when chosen to listen impartially and to decide the case intelligently on the evidence heard in the trial. Maintaining the integrity of our judicial system, too, requires that we protect those required to serve on juries from coercion or intimidation as they perform their duties. The persons selected as jurors have become very important people. As a group, they are the single most important part of our judicial system. Because of the significant and unique role jurors have in our system, they should be treated with respect and courtesy from the moment they arrive for jury duty.

Employers, too, whether the sole proprietor or the large corporation, enjoy the benefits of our independent judiciary and share the obligations of every citizen for making our jury system work. First and foremost, employers have a duty to ensure that employees can report for jury duty without fear of reprisal or loss of benefits. No juror can be expected to listen in the attentive manner required to fairly consider the evidence presented at a trial nor take the time to deliberate a verdict in a rational and careful way to reach a unanimous verdict if the juror is anxious and worried about the security of his or her employment or the loss of benefits as a result of absence from work because of jury service.

We in this country enjoy great freedoms and rights of citizenship not available to many around the world. Most Americans live a lifestyle and enjoy benefits that are envied by millions. Yet with such great blessings also come great responsibilities. Jury service by the average citizen and support and encouragement from employers for employees summoned for jury duty are small prices to pay for the benefits we reap in return. Jury duty is often inconvenient to both employers and employees; however, protection of those called for jury service is crucial to the maintenance and independence of the judiciary. [3]

---

[3] Jurors who consider jury service as an inconvenience might ponder what jury duty was like 500 years ago. Jurors were dragged before the court for jury duty and could be punished for reaching the wrong verdict. Original jurors could themselves be tried for perjury and upon conviction be imprisoned in the King's prison, their possessions confiscated and their houses destroyed. Jurors were routinely denied food and water while they deliberated. A judge, displeased with a jury verdict, could fine jurors on the spot and order them imprisoned until the fine was paid. Today, of course, a jury does not have to explain its verdict or justify it to the judge or the king.

The importance of jury duty and jurors free of intimidation or reprisal is reflected in both federal and state statutes. According to Title 28, *United States Code*, § 1875(a), "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employees' jury service . . . ." Violations of the statute may result in civil penalties, damages and injunctive relief. 28 *U.S.C.* § 1875(b). Under the statute, an employer has the duty to insure that his employee can report for jury duty without fear of reprisal. *Jeffreys v. My Friend's Place, Inc.*, 719 Fed. Supp. 639, 644-645 (M.D. Tenn. 1989). Employer reprisal in any form, whether by discharge or the elimination of benefits otherwise available, interferes with the integrity of the judicial system, is an obstruction of justice, fosters disrespect for the rule of law and jeopardizes the national policy of providing a fair cross section of the community on juries.

Tennessee state law likewise provides protection for jurors commensurate with the importance of jury service. Tennessee state law requires an employer to excuse an employee from employment "for the day or days required of the employee while serving as a juror in any court of the United States or the State of Tennessee" whenever jury duty exceeds three hours during the day. *Tenn. Code Ann.* § 22-4-108(a)(1). Each employee summoned for jury duty must be paid his or her usual compensation less the amount paid for jury duty. *Id.,* § 22-4-108(b)(1). No employer may discharge or discriminate against an employee for serving on jury duty. *Id.*, § 22-4-108(f)(1).[4] The

---

[4] This includes time spent traveling to and from jury duty.

violation of the Tennessee statute is a class A misdemeanor, punishable by imprisonment of 11 months and 29 days and a fine of $ 2,500.00. [5]

While the actions of Heritage toward its employee juror are contemptuous, likely amount to violations of both the federal and Tennessee statutes and are aggravated by the fact that the actions were taken on two separate occasions, this Court will, nevertheless, dismiss the show cause. The Court is convinced, based upon the communication from Robert Burk and the proffer made by Heritage's counsel, that the violations were not the result of a calculated and intentional plan to interfere with the efficient and orderly administration of justice. Additionally, Heritage has apologized to the Court for its actions and assured the Court that there will be no further similar incidents; [6] that its policy will be further revised to assure full compliance with both federal and state law regarding jury duty; has adopted a policy which actively encourages its employees to serve as jurors if called; and has restored to its employee who was called to jury duty in this Court all the benefits to which he was otherwise entitled. Heritage is forewarned, however, that the Court will deal harshly with any future actions on its part which interfere with service as jurors by any of its employees.

---

[5] Tenn. Code Ann. § 40-35-111

[6] While it has not been so represented to the Court, the Court also assumes that Heritage has apologized to its employee.

For the foregoing reasons, the show cause will be DISMISSED. The Clerk is directed to mail a copy of this Court's order to the affected juror and to post a copy of this Order on the Court's website to serve as notice to all employers in the district that this Court will not tolerate actions in the future which interfere with, intimidate or coerce those summoned for jury duty in this Court.

**SO ORDERED**:

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
